406 So.2d 790 (1981)
SUCCESSION OF Viola Alexander CLIVENS.
No. 12669.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1981.
Rehearing Denied December 18, 1981.
Roger R. Roy, New Orleans, for administratrix-appellee.
Nils R. Douglas, New Orleans, for intervenor-appellant Dorothy Clivens Vantrass.
Before SAMUEL, REDMANN, GULOTTA, BOUTALL, SCHOTT, GARRISON, CHEHARDY, BARRY, KLIEBERT and KLEES, JJ.
PER CURIAM.
This is an appeal by Dorothy Clivens Vantrass from a dismissal of her petition of intervention in the Succession of Viola Alexander Clivens, widow of George Clivens. Appellant asserted a claim on property being administered in this succession on allegations that the Succession of George Clivens owned an interest in part of the property and she is the acknowledged illegitimate child of George Clivens, was her father's sole heir and was entitled to be recognized as the owner of her father's interest in the property. The trial court maintained exceptions of no cause of action on the basis of LSA-C.C. Art. 919 despite the holding that this article was unconstitutional in Succession of Brown, 388 So.2d 1151 (La. 1980). The issue in this case is whether Succession of Brown should be applied retrospectively so as to permit appellant to assert her claim.
This issue was decided by this court in Succession of Ross, 397 So.2d 830 (La. App.4th Cir. 1981). Accordingly, the judgment is affirmed.
AFFIRMED.
REDMANN and SCHOTT, JJ., dissent and assign reasons.
KLEES, J., dissents for the reason assigned by SCHOTT, J.
REDMANN, Judge, dissenting.
The Supreme Court of the United States rules that the Equal Protection clause, U.S. Const. amend. 14, prohibits (to use that Court's words) "discrimination against illegitimates in a state intestate succession law," Trimble v. Gordon, 430 U.S. 762, 774, 97 S.Ct. 1459, 1467, 52 L.Ed.2d 31.
The majority discriminate against an acknowledged illegitimate child by refusing to *791 her a right that Louisiana law certainly grants to a legitimate child. If claimant Dorothy Clivens were a legitimate child, as from an unrevealed earlier marriage, the majority would concede that Dorothy could demand her inheritance notwithstanding an eight-year-old mistaken judgment of possession in favor of her father's widow. The majority denies this right to Dorothy Clivens on no other ground than that she is illegitimatethat her father was not married to her mother, a matter utterly beyond her control. The majority thus judicially legislates, to repeat the United States Supreme Court's words, "discrimination against illegitimates in a state intestate succession law."
The judgment appealed from should be reversed.[1]
SCHOTT, J., dissenting.
In my opinion, Succession of Ross, 397 So.2d 830 (La.App. 4th Cir. 1981) should be overruled and the judgment appealed from should be reversed. The facts of this case are indistinguishable from Ross. Here George Clivens died on September 24, 1971. He left no legitimate children and no ascendants so that his widow was sent in possession of his property, which was all community property, on December 17, 1974. The widow of George Clivens died on October 19, 1978, and her succession was opened the following November. Appellant intervened in the proceedings to assert her claim as the sole heir of George Clivens on June 27, 1979. In the Ross case Henry Ross died on August 11, 1971, his widow was sent in possession of his property on September 28 and his illegitimate children asserted their claim in 1979 in a suit to annul the judgment of possession.
In discussing whether Succession of Brown should be given a retroactive effect or not the court in Succession of Ross considered the three factors discussed in Chevron Oil Company v. Hudson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971):
"... (1) the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits and demerits must be weighed in each case by looking to the prior history of the rule in question; and (3) the inequity imposed by retroactive application must be weighed...."
I have carefully considered the reasoning of the court in applying the three factors to the situation at hand and have concluded, with all due respect to my colleagues, that the court's treatment of the second factor was erroneous.
The Supreme Court of the United States in the Chevron Oil Company case took this second factor from Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). In that case the question was whether the rule of the Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, applying the exclusionary rule to the states should operate retrospectively upon cases decided prior to the Mapp case. The court reasoned that the primary purpose for the extension of the exclusionary rule to the states was to deter lawless police action. The court stated:
"... We cannot say that this purpose would be advanced by making the rule retrospective. Misconduct of the police prior to Mapp has already occurred and will not be corrected by releasing the prisoners involved. Nor would it add harmony to the delicate state-federal relationship of which we have spoken as part and parcel of the purpose of Mapp. Finally, the ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late ...."
"... In rejecting the Wolf doctrine as to the exclusionary rule the purpose was to *792 deter the lawless action of the police and to effectively enforce the Fourth Amendment. That purpose will not at this late date be served by the wholesale release of the guilty victims."
The Ross decision was based in large measure on Lovell v. Lovell, 378 So.2d 418 (La. 1979) in which our Supreme Court declined to give retrospective application to its decision, declaring C.C. Art. 160 unconstitutional. However, the second factor to be considered under the Chevron Oil Company case as in the Linkletter case supported the conclusion that the court's action in Lovell would not be applied retroactively.
In Lovell the question was over the constitutionality of Art. 160 considering that it provided an opportunity for alimony for divorced women but not divorced men. The obvious purpose of the Lovell rule was to afford the same rights to men as the article afforded to women. The purpose was not to take away from women the right to seek alimony. Consequently, the retrospective application of the rule that the article was unconstitutional would not in any way further the purpose of the rule. But in the instant case a different result obtains when this factor is considered.
The purpose of the rule announced in Succession of Brown, supra was to remove the unconstitutional discrimination against illegitimates imposed by C.C. Art. 919. Among the rights of legitimate children, of which acknowledged illegitimates were deprived by Art. 919, was the right to assert a claim as an heir long after a judgment of possession was rendered, C.C. Art. 1030. By refusing to apply the rule of Succession of Brown retroactively, the primary purpose of the decision, i.e., putting an end to the discrimination against acknowledged illegitimates, is defeated. Thus, I have concluded that a consideration of the second factor of the Chevron Oil Company case dictates the opposite conclusion than that reached by my colleagues in Succession of Ross.
I am not unmindful of the court's legitimate concern in the Ross case that inequity might result if prior judgments of possession relying on Art. 919 were declared invalid and that such a holding might engender new litigation in each case where there had been justified reliance on the articles' validity. However, this concern must be considered in the light of Chevron Oil Company's third factor that the inequity imposed by retroactive application must be weighed. While concerns about stability of land titles and the inequities which might result in the relatively few cases of claims asserted by acknowledged illegitimates are properly placed on one side of the scale, and inequity resulting to such acknowledged illegitimates by a refusal to apply the holding that Art. 919 is unconstitutional must be placed on the other side. C.C. Art. 1030 confers on legitimate heirs the faculty of accepting or renouncing a succession for at least 30 years. Since it is unconstitutional to discriminate against acknowledged illegitimates with respect to succession proceedings occurring after Succession of Brown, it must likewise be unconstitutional to deprive acknowledged illegitimates of the same right presently available to legitimate heirs. This tips the scale in favor of retroactivity in the application of the holding.
NOTES
[1] The whole court evidently accepts, as properly presented by intervention in the father's widow's succession, the child's demand against her father's widow's heirs, as does this writer (while noting that suit to annul the judgment in the father's succession might be preferable, although it, too, would have to be brought against the widow's heirs).