YELVERTON, Judge,
dissenting.
Consent was not vitiated by fraud in this case. The trial court was clearly wrong in the finding that the agents told the La-Cazes “that the purpose of the deed was only to purchase the land and their rights to severance damages would remain and have to be handled by another department”. The testimony simply does not impute such a declaration to the agents. If the LaCazes got that impression, it was an unreasonable one. It was an inference not justified by this record.
I have read and reread the trial testimony, and LaCaze nowhere says that the agents told him that if he signed the deed he would still have his rights to severance damages. LaCaze seems to be suggesting that he got that impression, and that the agents knew he was under that impression but that they failed to enlighten him. This inference is not a reasonable one. At that point in time, there was but one appraisal, McNew’s. Right or wrong, that appraisal declared that there was no severance damage. The conveyancing language in the sale that included the severance damages was a contractual recognition that there was no such damage. The agents could not have believed that they and the State were getting the advantage of the La-Cazes. Former C.C. art. 1847, applicable at the time of this case, included in its definition of fraud “error ... created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other”. Since the facts known to the agents were that the LaCazes had suffered zero damages, signing the deed could cause neither advantage to the State nor loss to the landowners. Nor is there any evidence that the agents knew or should have known that the LaCazes believed they were retaining their rights to later dispute severance damages.
This was an arms-length business transaction between persons on an equal footing intellectually. LaCaze was not an unsophisticated businessman. He owned extensive property in the Natchitoches area, and had been a dealer, distributor and jobber for a major oil company there for 27 years. He admitted that he had the opportunity to read the contract when on rebuttal he testified that he “gandered at it”. We have pointed out above that it makes no sense to believe that the agents were trying to hide the language from him that gave up his severance damage rights. He admitted that he understood that language. Therefore the only reason he was not aware of that language was because he failed to read the contract.
A basic precept of contract law is that a party may not avoid the provisions of a contract he signs but fails to read or have explained to him. St. Landry Loan Company v. Avie, 147 So.2d 725 (La.App. 3rd Cir.1962); Minor v. Robertson, 461 So.2d 509 (La.App. 3rd Cir.1984); Guaranty Bank & Trust Co. v. Jones, 489 So.2d 368 (La.App. 5th Cir.1986). In the present *329 case, if the LaCazes were unaware that they were giving up their right to severance damages, it was not because of fraud or error, it was because they failed to read the contract. I would find clear error in the trial court’s determination that fraud vitiated the sellers’ consent in this transaction. I would reverse the judgment and dismiss the suit.